IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-CV-580-BO-BM

CYNTHIA MICHELLE SESSOMS, )
individually and on behalf of all others )
similarly situated, )
      Plaintiff, )
       )
v. )    O R D E R
       )
USHEALTH ADVISORS, LLC, )
      Defendant. )

This matter is before the Court on defendant USHealth Advisors' ("USHA") corrected motion to compel arbitration and stay proceedings. [DE 18]. Plaintiff Sessoms has opposed the motion, USHA has replied, and the matter is ripe for ruling. For the following reasons, the motion to compel arbitration and stay proceedings is denied.

BACKGROUND

Plaintiff instituted this action by filing a putative class action complaint against defendant. Plaintiff's claim arises under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. §§ 227, *et seq.* Plaintiff, a resident of Raleigh, alleges that on February 7, 2024, defendant caused a prerecorded voice message to be sent to plaintiff's cellular telephone. The message included an offer to provide health insurance information to plaintiff. Plaintiff alleges that she had not provided defendant with her express written consent to be contacted for marketing purposes by prerecorded message prior to receiving the call. Plaintiff alleges that defendant's actions violated the TCPA. *See* [DE 1].

Defendant answered the complaint [DE 10] and thereafter filed this motion to compel arbitration [DE 18] as well as a motion to stay discovery pending the resolution of the motion to

compel arbitration. [DE 20]. In support of the motion to compel arbitration, defendant contends the following.

NextGen Leads, LLC ("NextGen"), provides lead generation, technology services, and marketing to the insurance industry. [DE 19] Kelly Decl. ¶ 3. NextGen's records show that plaintiff visited the FirstQuoteHealth website (the Site), operated by NextGen, on December 26, 2023, January 30, 2024, and several other dates. *Id.* ¶ 15. When visiting the Site, plaintiff voluntarily provided her telephone number and other personal information before clicking a button labeled "GET QUOTE." *Id.*; *id.* ¶¶ 10-11. Immediately above this button was language stating that by clicking it, the user was giving "express written consent [] to be contacted by third parties," including by message sent by automatic telephoner dialer using a prerecorded voice, as well as agreeing to the hyperlinked "Terms of Use." *Id.* ¶ 11. The hyperlink opens a webpage containing an arbitration agreement ("the Agreement") stating, in relevant part, that "You and we agree that all claims . . . arising out of or relating to . . . any acts or omissions for which you may contend NextGen . . . is liable relating thereto or to the information, products or services of third parties, shall be finally, and exclusively, settled by binding arbitration." [DE 19-1] at 4. "We" is defined by the Terms and Conditions of Use as NextGen. *Id.* at 2.

NextGen, whose website plaintiff visited, is not a party to this action. Rather, Sessoms filed a putative class action complaint alleging that USHA violated the TCPA by calling her without prior express consent and by using a prerecorded voice. USHA contends it is one of the third parties referenced in the Agreement and is attempting, through its motion, to compel arbitration of plaintiff's claim.

2

ANALYSIS

Section 4 of the Federal Arbitration Act ("FAA") allows a party to an arbitration agreement to enforce that agreement by petitioning any district court for an order compelling arbitration. 9 U.S.C. § 4. Under § 4, arbitration will be compelled if (1) "the parties have entered into a valid agreement to arbitrate," and (2) "the dispute in question falls within the scope of the arbitration agreement." *Chorley Enterprises, Inc. v. Dickey's Barbecue Restaurants, Inc.*, 807 F.3d 553, 563 (4th Cir. 2015); *Muriithi v. Shuttle Exp., Inc.*, 712 F.3d 173, 179 (4th Cir. 2013). The FAA "reflects a liberal federal policy favoring arbitration agreements." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (quotations omitted). But the presumption in favor of arbitration does not apply "when there remains a question as to whether an agreement [to arbitrate] even exists between the parties in the first place." *Raymond James Fin. Servs., Inc. v. Cary*, 709 F.3d 382, 386 (4th Cir. 2013).

Before deciding whether USHA is entitled to enforce the Agreement as a third-party beneficiary of the contract between plaintiff and NextGen, the Court must first decide whether the question of arbitrability has been delegated to an arbitrator. The Agreement incorporates the procedural rules of the American Arbitration Association, which reserve to an arbitrator the power to rule on the "existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim. . . ."

Nonetheless, the Fourth Circuit has made clear that "a court, not an arbitrator, must determine whether a non-signatory to an agreement that contains an arbitration provision can enforce that provision against a signatory to the agreement." *Isernia v. Danville Reg'l Med. Ctr.*, No. 22-2224, 2024 U.S. App. LEXIS 11806, at *2 (4th Cir. 2024); *see also Rogers v. Tug Hill Operating, LLC*, 76 F.4th 279, 286 (4th Cir. 2023) (stating "that it is a court, not an arbitrator, that

must initially decide whether a nonparty to an arbitration agreement is entitled to enforce it."). Both *Isernia* and *Tug Hill* reversed the granting of a motion to compel arbitration based on the district courts' "mistaken belief that the incorporation of [certain arbitration] rules in the Agreement automatically delegated all questions of arbitrability between the parties [] to an arbitrator." *Isernia*, 2024 U.S. App. LEXIS 11806, at *10-11. Holding otherwise would have the counterintuitive effect of allowing "a party with no contractual right to compel arbitration." *Tug Hill*, 76 F.4th at 287.

USHA attempts to distinguish the case at hand from *Isernia* and *Tug Hill* by narrowing their holdings. The arbitration agreements of *Tug Hill* and *Isneria*, USHA argues, were only enforceable between the two parties signing them. The Agreement, on the other hand, uses broader language that includes references to third parties. However, this argument ignores the clear holding of both *Tug Hill* and *Isneria*, neither of which are limited to arbitration agreements that reference only the parties signing it. While it is true that the *Tug Hill* arbitration agreement did not include any references to third parties, the court's holding applies broadly. *See Tug Hill*, 76 F.4th at 287 (stating that when "the party seeking to enforce an arbitration agreement is not itself a party to that agreement, *the district court* must determine [] whether that party is entitled to enforce the arbitration agreement under state contract law") (emphasis original).

Having determined that the Court must decide whether USHA may compel arbitration of plaintiff's claim as a third-party beneficiary of the Agreement, the Court turns to the merits of the issue.

Sessoms and USHA agree that, per the Site's Terms of Use, Delaware law governs the third-party beneficiary question. Under Delaware law, "the intention of the contracting parties is paramount in determining whether others have standing as third-party beneficiaries." *Hadley v.*

4

*Shaffer*, No. CIV.A. 99-144-JJF, 2003 WL 21960406, at *5 (D. Del. 2003). Importantly, a "third party may benefit from the performance of the contract without acquiring third party beneficiary status." *Bromwich v. Hamby*, C.A. No. S08C-07-008, 2010 Del. Super. LEXIS 578, 2010 WL 8250796, at *2 (Del. Super. Ct. 2010); *see also Comrie v. Enterasys Networks, Inc.*, No. CIV.A.19254, 2004 WL 293337, at *2 (Del. Ch. 2004) (holding that an "incidental beneficiary" does not have standing to enforce agreements). For a party to establish itself as a third-party beneficiary in Delaware, it must show that: "(a) the contracting parties [] intended that the third party beneficiary benefit from the contract, (b) the benefit [was] intended as a gift or in satisfaction of a pre-existing obligation to that person, and (c) the intent to benefit the third party [was] a material part of the parties' purpose in entering into the contract." *MBIA Ins. Corp. v. Royal Indem. Co.*, 294 F. Supp. 2d 606, 612 (D. Del. 2003).

First, the Court determines that USHA correctly argues that it was an intended beneficiary of the Agreement. While USHA is not mentioned by name, the Terms and Conditions, which the Court considers as a whole, expressly refer to third parties and marketing partners, and the Site is clear that when a user submits her information, that user is agreeing to be contacted by third parties in response to the Site user's request. USHA also maintains that the benefit it received from the contract between Sessoms and NextGen "was a material aspect of the agreements at issue" because the language about third parties in the Agreement "necessarily refers" to "NextGen's commercial understanding and arrangement with each of the marketing partners, including USHA, about providing consent-based leads subject to an arbitration agreement." [DE 24] at 11. However, prong (c) of the *MBIA* test establishes that merely benefitting from a contract is not sufficient to become a third-party beneficiary under Delaware law. USHA mistakenly assumes that because it benefits from the Agreement, the benefit was material to Sessoms' and NextGen's purpose in contracting.

5

While USHA does benefit from the Agreement in this case, it is equally clear that NextGen would have contracted with Sessoms even if it could not include the benefit to USHA. Thus, the benefit was not material to the purpose of their contract, and USHA is not a third-party beneficiary under Delaware law. *See also Isernia v. Danville Reg'l Med. Ctr., LLC*, No. 4:22-CV-00022, 2024 WL 4697681, at *7 (W.D. Va. Nov. 6, 2024) (applying Virginia law) ("Because the Agreement has neither an express purpose nor the context or circumstances to suggest Defendants are intended third-party beneficiaries to the Agreement, they may not enforce the Agreement's arbitration provision on this basis.").

Because USHA is not a third-party beneficiary, and the benefits it receives are incidental, it may not enforce the arbitration provision in the Agreement. The motion to compel arbitration is therefore denied.

## CONCLUSION

For the foregoing reasons, Defendant USHealth Advisors' corrected motion to compel arbitration and stay proceedings [DE 18] is DENIED. USHealth Advisors' corrected motion to stay discovery pending the resolution of its motion to compel arbitration [DE 20] is DENIED AS MOOT.

SO ORDERED, this **21** day of August 2025.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE